United States District Court
Southern District of Texas
**ENTERED**
March 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JASON R. BAILEY, M.D., P.A., *et al.*, § § *Plaintiffs*, § § v. § § BLUE CROSS & BLUE SHIELD OF § TEX., INC., *et al.*, § § *Defendants*. § | Civil Action H-21-917 |

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Magistrate Judge's amended memorandum and recommendation ("AM&R") (Dkt. 58) denying the plaintiffs' second motion to remand (Dkt. 38). The defendants agree that the motion should be denied but object to the AM&R's interpretation of the anti-assignment clauses for twelve of the thirteen plans. Dkt. 59 at 5. After considering the AM&R, related documents, objection, response, reply, sur-reply, and the applicable law, the court is of the opinion that the objection should be SUSTAINED, the AM&R should be AMENDED, and the motion to remand should be DENIED.

### I. BACKGROUND

This case involves a dispute over payments for surgical services and related medical care. Dkt. 58 at 2. The plaintiffs brought the instant lawsuit in state court on March 12, 2020, pursuing common law contract claims, a tortious interference claim, a Texas Laws & Regulations for Payment of Emergency Services claim, and a Texas Prompt Pay Act claim. *Id.* The defendants removed the case to federal court, but it was remanded due to procedural defects on December 2, 2020. *Id.* at 3.

The defendants removed the case a second time on March 19, 2021. Dkt. 1. The defendants offer two theories justifying removal. *Id.* ¶¶ 12–13. The first theory is that the claims arising from thirteen different plans are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). *Id.* ¶ 12. The second theory is that the federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes removal. *Id.* ¶ 13.

On April 15, 2021, the case was referred to the Magistrate Judge under 28 U.S.C. § 636(c). Dkt. 35. The plaintiffs filed the instant motion to remand on May 26, 2021. Dkt. 38. On January 14, 2022, the Magistrate Judge issued the AM&R recommending that the plaintiff's motion be denied after concluding that the court has jurisdiction due to complete ERISA preemption for one of the thirteen plans and that it is proper to exert supplemental jurisdiction on the remaining claims. Dkt. 58 at 7–19, 24–25. The AM&R also determined that removal was proper under the federal officer removal statute. *Id.* at 19–24.

The defendants timely filed their objection to the AM&R on January 28, 2022. Dkt. 59. The defendants argue that while the AM&R correctly concluded that the motion to remand should be denied, it incorrectly interpreted the anti-assignment language in the twelve other plans. *Id.* at 5. The plaintiffs did not object to the AM&R but filed a response to the defendants' objection on February 11, 2022. Dkt. 60. The court permitted the parties to file a reply and sur-reply. Dkts. 61, 64, 65.

## II. LEGAL STANDARD

A motion to remand is considered a dispositive motion for the purposes of Federal Rule of Civil Procedure 72. *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 763–64 (5th Cir. 2016). For dispositive matters, the court "must determine de novo any part of the magistrate judge's

2

disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983).

### III. ANALYSIS

The defendants object to section III(B)(1)(ii) of the AM&R. Dkt. 59 at 6. This section of the AM&R concludes that the anti-assignment clauses in twelve of the thirteen plans prevent complete ERISA preemption under the first prong of *Davila* thereby eliminating federal-question jurisdiction for claims related to those plans. Dkt. 58 at 11–14. The twelve plans contain identical "Who Receives Payment" sections that contain the following anti-assignment clause:

> Except as provided in the section **Assignment and Payment of Benefits**, rights and benefits under the Plan are not assignable, either before or after services and supplies are provided.

*See, e.g.*, Dkt. 1, Ex. 3 at 166 (bold in original). Additionally, the twelve plans contain identical "Assignment and Payment of Benefits" sections which state:

> If a written assignment of benefits is made by a Participant to a Provider and the written assignment is delivered to the Carrier with the claim for benefits, the Carrier will make any payment directly to the Provider. Payment to the Provider discharges the Carrier's responsibility to Participant for any benefits available under the Plan.

*See, e.g.*, *id.* at 232.

The AM&R concluded "that read together, the provisions unambiguously prohibit assignments except in cases where a written assignment is made by a Participant to a provider and delivered to the Carrier with a claim for benefits" and that it "allows only for the assignment of the right to receive direct payments." Dkt. 58 at 12–13. The defendants object to this conclusion

3

and argue for an interpretation of these sections where delivery of the written assignment is a condition for automatic payment but not a condition for the assignment of benefits itself. Dkt. 59 at 7. The court agrees with the defendants.

"When interpreting an ERISA plan, the provisions are read 'not in isolation, but as a whole.'" *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (quoting *Dallas Cnty. Hosp. Dist. v. Assocs.' Health & Welfare Plan*, 293 F.3d 282, 288 (5th Cir. 2002)). "The provisions are to be read according to their plain meaning and as they are likely to be 'understood by the average plan participant.'" *Id.* (quoting *Walker v. Wal-Mart Stores, Inc.*, 159 F.3d 938, 940 (5th Cir. 1998)). A plan "should be interpreted to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *See Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000).

The plain meaning of the "Who Receives Payment" section sets forth a general anti-assignment rule with the phrase "[e]xcept as provided in the section Assignment and Payment of Benefits" creating an exception to that general rule. *See* Dkt. 1, Ex. 3 at 166. The plain meaning of the "Assignment and Payment of Benefits" section creates two conditions for direct payment: (1) a written assignment of benefits to a provider; and (2) delivery of the written assignment. *See id.* at 232.

The plaintiffs urge the court to read the "Assignment and Payment of Benefits" section as an authorization of payment and not an exception to the general anti-assignment clause. *See* Dkt. 60 at 9 ("Defendants refer to the 'Assignment and Payment of Benefits' provision as the so-called 'carve-out provision,' but this is a misnomer. It is a direct payment provision."). The court

4

disagrees. The "Who Receives Payment" section clearly states that the "Assignment and Payment of Benefits" section serves as an exception to the general anti-assignment rule. *See* Dkt. 1, Ex. 3 at 166. The unambiguous language in the "Who Receives Payment" section prohibits a reading of the "Assignment and Payment of Benefits" section only as a direct-payment provision and not as an exception or "carve-out provision." Thus, the court concludes that these sections permit an assignment of benefits if they are: (1) in writing; and (2) made to a provider.

Another court in this district has reached the same conclusion. *See Shih v. Blue Cross & Blue Shield of Tex. Inc.*, No. 4:21-CV-1530, 2022 WL 444476, at *3 (S.D. Tex. Feb. 10, 2022) (Ellison, J.) (concluding identical plan language permits assignment to providers and met the first prong of *Davila*). However, at least one other district court has interpreted this language differently. *See Cooperman v. Horizon Blue Cross Blue Shield of New Jersey*, No. 19-CV-19225, 2020 WL 5422801, at *2 n.2 (D.N.J. Sept. 10, 2020) (granting a motion to dismiss for lack of standing under identical plan language because the two conditions in the "Assignment and Payment of Benefits" section had not been met). The AM&R relied partially on the footnote in *Cooperman* but was unable to consider *Shih* because the latter was filed after the AM&R. *See* Dkt. 58 at 13. The court determines that the analysis of the plan language in *Shih* is more persuasive than the footnote in *Cooperman*.

The plaintiffs argue that defendant Blue Cross & Blue Shield of Texas ("BCBSTX") has taken inconsistent positions, and thus the defendants should be estopped from presenting an alternative interpretation to that which BCBSTX presented in *Cooperman*. Dkt. 65 at 2. "[J]udicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *Jethroe v. Omnova Sols.,*

*Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). "The purpose of the doctrine is 'to protect the integrity of the judicial process.'" *Coastal Plains*, 179 F.3d at 205 (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). The plaintiffs' argument fails because the inconsistency presented is not of the sort that gives rise to the application of judicial estoppel. *See Brandon*, 858 F.2d at 268 (taking inconsistent positions regarding ERISA preemption when defending against state-law claims and arguing for federal jurisdiction "does not approach the level of culpability that would justify application of the doctrine"). Further, while BCBSTX was a defendant in *Cooperman*, there are additional defendants present in both *Cooperman* and the instant case that are unique to each dispute. *See* 2020 WL 5422801. The court determines that the presence of distinct defendants also renders judicial estoppel inappropriate because the integrity of the judicial process is not implicated. *See Coastal Plains*, 179 F.3d at 205 ("the doctrine is intended to protect the judicial system, *rather than the litigants*").

The AM&R rejected the defendants' interpretation in part because it would render the general anti-assignment clause superfluous. *See id.* The plaintiffs urge the court to reach the same conclusion and claim that the defendants' reading would "invert the provisions" where "the second provision states the rule, rather than the principal provision." Dkt. 60 at 10. The court disagrees. The general anti-assignment provision is still primary under the court's interpretation, but it is subject to an exception. *See* Dkt. 1, Ex. 3 at 166. Nor is the exception so broad that it renders the rule superfluous because the exception is limited to assignments to providers.[1] *See id.* at 232. The

---

[1] The plaintiffs dispute that the phrase "to providers" in the "Assignment and Payments of Benefits" section is central to the analysis because the "Who Receives Payment" section also references "providers." Dkt. 65 at 4. This argument is unpersuasive. While the "Who Receives

6

limited scope of the exception means that any attempted assignments to all other third parties are still subject to the general anti-assignment clause.² *Id.* Moreover, an interpretation that reads the "Assignment and Payment of Benefits" section as only an authorization of direct payment would render the section's heading and subsequent condition requiring a written assignment superfluous.³ Thus, the plaintiffs' interpretation must be rejected. *See Transitional Learning*, 220 F.3d at 431. Therefore, the defendants' objection to section III(B)(1)(ii) of the AM&R is SUSTAINED.

No objections were made to the remaining sections of the AM&R. *See* Dkt. 59. Thus, the court examines these sections for clear error on the face of the record. *See* Fed. R. Civ. P. 72(b),

---

Payment" section states that "[b]enefit payments will be made directly to contracting Providers when they bill BCBSTX" and "some Providers may require payment directly," the anti-assignment clause makes no such reference. *See* Dkt. 1, Ex. 3 at 166. Further, if the "Assignment and Payment of Benefits" section were a direct payment provision rather than an exception to the anti-assignment clause, as the plaintiffs urge, it would render these statements superfluous. Thus, the statements cut against the plaintiffs' interpretation rather than support it. *See Transitional Learning*, 220 F.3d at 431.

² The court notes that this interpretation is in accord with the decision in *Hermann Hospital v. MEBA Medical and Benefits Plan*, but it is based on different reasoning. *See* 959 F.2d 569, 575 (5th Cir. 1992) (*Hermann II*), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (en banc) (per curiam). In *Hermann II*, the Fifth Circuit determined that a general anti-assignment clause—without an explicit exception—applied only to unrelated, third-party assignees because it incorporated typical spendthrift trust provision language and therefore did not bar assignment to the provider. *Id.* The plaintiffs argue at length that *Hermann II* does not stand for the proposition that all anti-assignment clauses apply only to third-party assignees. Dkt. 60 at 21–23. This argument is unpersuasive because the court's conclusion is not based on an application of *Hermann II* as a rule. Instead, the court bases its conclusion on the plain meaning of the plan language, which explicitly creates an exception for assignment to providers rendering the anti-assignment clause applicable to third-party assignees. *Hermann II* illustrates that the result is not unprecedented and matches existing industry practices described by the Fifth Circuit.

³ The parties have not drawn the court's attention to any language in the plan that excludes section heading from the agreement, nor has the court found such language during its examination of the record. *See* Dkts. 1, 59–61. Therefore, the court concludes that the section headings are part of the agreement and must be included in the analysis.

Advisory Comm. Note (1983). The court finds no clear error on the face of the record for these sections and adopts the remainder of the AM&R.

## IV. CONCLUSION

For the reasons stated above, the defendant's objection is SUSTAINED. The court AMENDS section III(B)(1)(ii) of the AM&R (Dkt. 58) to conform with this order. Finding no clear error in the remaining sections, the court ADOPTS the remainder of the AM&R. Therefore, the plaintiffs' second motion to remand (Dkt. 38) is DENIED.

Signed at Houston, Texas on March 7, 2022.

_____
Gray H. Miller
Senior United States District Judge